### G. A. DENNISON v. FRANK SPIVEY ET AL.

(Filed 20 October, 1920.)

**1. Bills and Notes—Notes—Negotiable Instruments—Fraud—Burden of Proof—Evidence.**

Evidence that a note sued on was not to be delivered until certain other signatures were placed thereon, which were not obtained, and the property for which the note was given had never been delivered to the signers, and that the person thus negotiating for the sale had left the State, and the plaintiffs claimed to be innocent purchasers for value, in due course, etc., is sufficient to sustain an affirmative finding upon the issue of fraud, and to put upon the plaintiff the burden of proving that he had purchased in due course without notice of the defect in the title of the notes.

**2. Same—Infirmity of Instrument—Notice—Rule of the Prudent Man.**

When the plaintiff claims to be an innocent purchaser for value of the note sued on, by endorsement, before maturity, and without notice of fraud between the original parties, evidence that he lived in another State, and asked no questions of ·the orginal payees, living near him, and had made no demands on them, is sufficient to sustain a verdict against him upon the question as to whether he was a purchaser without notice of the infirmity of the instrument, or purchased under circumstances so suspicious as to put a man of reasonable prudence upon inquiry, and affect him with notice.

APPEAL by defendant from *Allen, J.,* at November Term, 1919, of COLUMBUS.

This is an action on three notes, executed 28 April, 1913, for $800 each, due respectively 1 June, 1914; 1 June, 1915; and 1 June, 1916, in purchase of a stallion. Summons was served 6 July, 1917. These notes were executed to Crawford and Ceas, and the defendants pleaded and offered proof that the signatures of the notes were procured by fraud. The plaintiff alleged that he was a holder in due course, without notice, having purchased the notes soon after execution and before maturity, and for value. Verdict and judgment for defendants. Appeal by plaintiff.

*I. B. Tucker and T. C. Bowie for plaintiff.*
*Schulken, Grady & Toon for defendants.*

CLARK, C. J. In *Bank v. Exum,* 163 N. C., 199, this Court said: "When there is evidence tending to show fraud in the execution of a note, the burden is thrown on the plaintiff to show that it was a *bona fide* purchaser and not upon the defendants to show the negative of that proposition."

In this case the jury found the issues as follows:

"1. Were the signatures to the notes sued on procured by fraud? Answer: 'Yes.'

"2. Did the plaintiff purchase said notes in good faith and without notice of infirmity or any defect and before maturity and for value? Answer: 'No.'"

The case is resolved into the discussion whether there is any evidence that will support the findings of the jury. The defendants admit they signed their names to these notes, but alleged and put in proof that they did so under an agreement with one John Crawford that they were not to be delivered unless the signatures of W. M. Cox, C. C. Pridgen, and Auty Baldwin were obtained to the said notes. This was not done. And the defendants claim that these notes were never delivered to any one by the authority of any one of these defendants, and that John Crawford, having failed to secure these signatures aforesaid to said notes, refused to deliver, and did not deliver said stallion to these defendants, but afterwards sold him for $200, and failed and refused to return said notes to these defendants as he had agreed to do, but immediately left the State, carrying these notes with him, and has never been since seen by these defendants who have not received any value whatever for said notes. There was allegation and proof that the names of these defendants to said notes were obtained through false and fraudulent misrepresentations of John Crawford.

There was ample evidence to be submitted on the first issue, and the burden of proof on this second issue was therefore on the plaintiff. The

plaintiff was not at the trial, and the only evidence for him was his deposition, taken at Milan, Michigan, in which he states that he knew the signature of E. E. Ceas, of the firm of Crawford & Ceas, and purchased the notes in the early part of 1914 and asked no questions; that he purchased them before maturity and paid the face value, less 10 per cent discount. The price of the stallion was $2,400, for which the three notes for $800 each were given, which were to be signed by twelve men, but as three failed to sign, $200 has since been credited on each note, which was more than the 10 per cent which the plaintiff alleges was the inducement to buy, and which credits were entered without the consent of the defendants.

The defendants also rely on the fact that the plaintiff, who lived 1,000 miles away, testified that he bought these notes and "asked no questions"; that he had never called upon Crawford and Ceas, the indorsers, who lived near him, for payment, nor has brought any action against them.

In *Bank v. Branson*, 165 N. C., 354, the Court said: "Where a party is about to receive a bill or note, if there are any suspicious circumstances accompanying the transaction, or within the knowledge of the party, as would induce a prudent man to inquire into the title of the holder or the consideration of the paper, he shall be held bound to make such inquiry; or if he neglects to do so, he shall hold the paper subject to all equities. In other words, he shall act in good faith and not willfully remain ignorant when it was his duty to inquire into the circumstances and know the facts."

Upon all the evidence, the jury might well consider that the transaction was an unusual one, and not likely to be engaged in by prudent business men, and the circumstances in evidence were calculated to create a well grounded suspicion as to the dealings between the parties with reference to said notes.

The court, therefore, did not err in refusing all the prayers of the plaintiff to instruct the jury:

1. To answer the issue of indebtedness in favor of the plaintiff.

2. If they believe the evidence for the defendants to answer the first issue "No"—in favor of the plaintiff.

3. Upon the plaintiff's uncontradicted testimony the jury should answer the second issue "Yes."

4. That the defendants failed to offer evidence sufficient to establish fraud, and therefore the jury should answer that issue against the defendant.

Besides the circumstances in evidence, this Court, in *Trust Co. v. Ellen*, 163 N. C., 45, and *Bank v. Exum, ib.*, 201, quoted *Winter v. Nobs*, 19 Idaho, 28, where the Court calls attention to numerous cases in the

reports of many States of actions upon notes for stallions obtained under circumstances similar to these, the plaintiffs always alleging that they were purchased for value and before maturity and without notice. No error.